## Court of Appeals.

### *November,* 1885.

### SHERWIN *v.* PEOPLE.

CRIMINAL CONTEMPT.—DISOBEDIENCE TO SUBPŒNA.—2 R. S. 278, SUBD. 3.

The "willful disobedience of any process or order lawfully issued by or made by" a court of record, which is made a criminal contempt by 2 Rev. Stat. 278, § 10, subd. 3,* includes only disobedience of such process or order as is expressly directed by the court itself, while sitting officially in the discharge of its judicial functions, and requiring something to be done by the party to whom it is directed, which it is within the province of the court to direct, and which it had power and authority to command in its capacity as a judicial tribunal.

It does not include a process issued merely by the act of a public official,— *e. g.*, a district attorney,—without any direct action or determination of the court.

An indictment under this statutory provision should aver that the willful disobedience alleged was within the terms of the statute a distinct and clear disobedience of the process or order of the court of record, stated in said indictment.

Disobedience of a subpœna is not under our statute a criminal offense punishable by indictment.

A statutory crime can only be created by phraseology which is clear, direct and unquestionable as to its intention.

WRITS of error and appeals to review judgments of the General Term of the Supreme Court, Third Department, of

---

* Now embodied in Penal Code, § 143, subd. 4. By *Code Crim. Pro.* § 619, "Disobedience to a subpœna or a refusal to be sworn, or to testify, may be punished by the court or magistrate as for a criminal contempt in the manner provided in the Code of Civil Procedure."

December 15, 1884, affirming convictions of the defendant in the Albany Oyer and Terminer.*

The people also brought error from one of the same judgments, so far as it affirms an order granting leave to make and serve a bill of exceptions, and denies a motion to strike same from the record.

The facts to be considered are as follows:

Three indictments were found against defendant Sherwin in the Court of Sessions of Albany county, at the June Term, 1874. The three indictments each contain two counts and are precisely alike, except that the indictments against Phelps therein mentioned, are respectively designated as indictments for grand larceny Nos. 1, 2 and 3. Indictment No. 1 is here given:

"In the Court of Sessions of the County of Albany, of June Term, in the year of our Lord one thousand eight hundred and seventy-four

" CITY AND COUNTY OF ALBANY, ss. :

" The jurors for the people of the state of New York, in and for the body of the city and county of Albany, being then and there sworn and charged upon their oath,

" *Present*, That on the 25th day of April, in the year of our Lord one thousand eight hundred and seventy-four, at the city and county aforesaid, a certain writ of the people of the state of New York, called a subpœna, was duly and lawfully issued and tested by and in the name of T. R. Westbrook, one of the justices of the Supreme Court of said state, on the day and at the city aforesaid, which said writ was directed to Frank R. Sherwin by the name of F. R. Sherwin, and by which said writ he was, in the name of said people, commanded that laying aside all pretenses and excuses whatsoever, he appear in his proper person before the Court of Oyer and Terminer to be held at the City Hall, in the city of Albany, in and for said county of Albany, on the eighteenth day of May, eighteen hundred and seventy-four, at three o'clock in the afternoon of that

---

* See previous proceedings in this case. People *ex rel.* Sherwin v. Mead, 28 *Hun*, 227; 1 *N. Y. Crim. Rep.* 417; People v. Sherwin, 1 *Id.* 543.

day, then and there to testify and give evidence on behalf of
said people concerning a certain indictment to be tried in said
court against Charles H. Phelps, for grand larceny, No. 1; that
the said writ of subpœna was, on the first day of May, in the
year of our Lord one thousand eight hundred and seventy-four,
at the city of New York, in the said State of New York, exhib-
ited to the said Frank R. Sherwin and duly served upon him,
the said Frank R. Sherwin, and a copy of the said writ was then
and there delivered to the said Frank R. Sherwin and left with
him, who then and there had notice to appear and give evidence
according to the exigency of said writ. Yet the said Frank R.
Sherwin contriving and intending to impede and obstruct the
due course of justice, unlawfully and willfully disobeyed the
said writ of supœna, and did not appear before the said Court
of Oyer and Terminer, holden at the time and place specified
in the said writ of subpœna, to testify to the truth and give evi-
dence before the said court on the trial of said bill of indict-
ment so preferred against the said Charles H. Phelps, to the
great hindrance and delay of public justice, in contempt of the
court aforesaid, against the form of the statute in such case
made and provided, and against the peace of the people of the
state of New York and their dignity.

*Second count.* And the jurors aforesaid, upon their oath
aforesaid do further present:

" That on the twenty-fifth day of April, in the year of our
Lord one thousand eight hundred and seventy-four, at the city
and county aforesaid, a certain process commonly called a
subpœna, was duly and lawfully issued by Nathaniel C. Moak,
the district attorney of the county of Albany, in support of the
prosecution of a certain indictment then pending in the Court
of Oyer and Terminer in and for said county against Charles
H. Phelps for grand larceny No. 1, and subscribed by the said
district attorney, and tested by and in the name of T. R. West-
brook, one of the justices of the Supreme Court of said
state, on the day and at the city aforesaid, which said process
of subpœna was directed to Frank R. Sherwin, by the name of
F. R. Sherwin, and by which said process of subpœna he was,
in the name of the people of the state of New York, com-
manded that laying aside all pretenses and excuses whatsoever,

he appear in his proper person before the Court of Oyer and Terminer, to be held at the City Hall in the city of Albany, in and for said county of Albany, on the eighteenth day of May, eighteen hundred and seventy-four, at three o'clock in the afternoon of that day, then and there to testify and give evidence on behalf of said people concerning a certain indictment to be tried in said court against Charles H. Phelps for grand larceny No. 1 ; that the said process of subpœna was, on the first day of May, in the year of our Lord one thousand eight hundred and seventy-four, at the city of New York, in the said State of New York, exhibited to the said Frank R. Sherwin, and duly served upon him, the said Frank R. Sherwin, and a copy of said subpœna was then and there delivered to the said Frank R. Sherwin and left with him, who then and there had notice to appear and give evidence according to the exigency of said process of subpœna. Yet the said Frank R. Sherwin, contriving and intending to impede and obstruct the due course of justice, unlawfully and willfully disobeyed the said process of subpœna, and did not appear before the said Court of Oyer and Terminer, holden at the time and place specified in the said process of subpœna, to testify to the truth and give evidence before the said court on the trial of said bill of indictment so preferred against the said Charles H. Phelps, to the great hindrance and delay of public justice, in contempt of the court aforesaid, against the form of the statute in such case made and provided, and against the peace of the people of the State of New York and their dignity.

"NATHANIEL C. MOAK,
"*District Attorney.*"

Defendant was arraigned on all the indictments, on October 9, 1883, and pleaded not guilty ; and was brought to trial before the Albany Oyer and Terminer, on October 22, 1883, on the first indictment. At that trial, the jury found the defendant, Sherwin, "guilty as charged in the indictment, *with a recommendation to the mercy of the court.*" On December 28, 1883, Sherwin withdrew his pleas of not guilty to the second and third indictments against him. Thereupon he was sentenced by the court, upon indictment No. 1, to imprisonment in the penitentiary of Albany county, *at hard*

*labor*, for the term of one year, and to pay a fine of $250, and that in default of such payment he be confined on account of the non-payment of the fine *at hard labor* in the same penitentiary for an additional term of not exceeding six· months. Upon the indictment No. 2, defendant was sentenced to be imprisoned *at hard labor* in the same penitentiary for the term of six months, and to pay a fine of $125, and that, in default of such payment he be confined on account of the non-payment thereof, in the same penitentiary, for an additional term of not exceeding three months; such sentence under that indictment to take effect.and commence .at the termination of the first term of imprisonment in the penitentiary, to which defendant had been so just sentenced by the court upon indictment No. 1. The sentence upon indictment No. 3 was imprisonment *at hard labor* in the same penitentiary and in the same terms as the last sentence ; the same to take effect and to commence upon the termination of the second term of imprisonment, to which defendant had just been sentenced under indictment No. 2.

From those judgments and sentences defendant, on January 5, 1884, appealed to the General Term of the Supreme Court by notices of appeal then served and filed.

By order of the justice who presided at the Court of Oyer and Terminer, at which the conviction was had, and the sentences were imposed, the defendant had leave to make and serve a bill of exceptions in case No. 1.

Upon indictment No. 1, certificate of probable cause and stay of proceedings was signed by Judge Osborne, who had presided at the trial and sentenced the prisoner.

In cases 2 and 3, similar certificates and stays were granted by Judge Osborne, July 3, 1884. It being a matter of question whether, as all these indictments had been found prior to the enactment and going into operation of the Penal Code and the Code of Criminal Procedure, appeals would lie, writs of error were allowed by Judge Ingalls, on July 24, 1884, in each case. The same proceedings were returned at General Term to the writs of error as to the notices of appeal.

Both appeal and writ of error in each case at General Term

were disposed of by a single order and judgment of affirmance, December 15, 1884.

The cases came before this court in like manner on both writs of error and appeals. The writs of error were allowed January 3, 1885, by Judge NOAH DAVIS, who directed that same should operate as stays of proceedings, and who certified that in his opinion there was reasonable doubt whether the judgments affirming the conviction should stand. The same proceedings were returned to this court on writs of error and on notices of appeal.

*Thos. H. Edsall* and *Samuel Hand,* for Sherwin, defendant, and plaintiff in error.—These actions and proceedings, having been commenced prior to September 1, 1881, when the Code of Criminal Procedure took effect, were required to be con- ducted in the same manner as if that Code had not been passed ; and the proceedings against the defendant are properly brought up for review upon the writs of error and the returns thereto. (Very full points were presented on behalf of defendant, but as they are covered by the opinion of the court, they are not here given.)

*D. Cady Herrick,* district attorney, *N. C. Moak,* of coun- sel for the people, defendants in error.—I. A subpœna is a pro- cess of the court. Yorks *v.* Peck, 31 *Barb.* 350. And was properly issued by the district attorney with the same effect as if issued on the special order of the court. What a court or person does by its legally authorized officer or agent, it, in judg- ment of law, does itself. *Qui per alium facit per seipsum facere videtur. Broom's Max.* (7 Am. ed.) 817. Writs and process may be issued by attorneys. 2 *R. S.* 278, § 9 ; 1 *Burr. Pr.* (2 ed.) 52, 94, 95. "Most of the acts . . . . which are, in the course of the action, habitually and exclusively per- formed by the officers of the court, are still supposed to be performed directly by the court itself. So their language pur- ports, and so they appear when the proceedings come to be recorded at the close of the action." 1 *Burr. Pr.* (2 ed.) 53. "There shall be elected or appointed in the manner hereinaf- ter declared or prescribed, the following civil officers," etc. 1

*R. S.* 95, § 1 ; 1 *Edm. St.* 86. Among the judicial officers are "a clerk, a sheriff, a surrogate and a district attorney for the county." 1 *R. S.* 97 ; 1 *Edm. St.* 88. District attorneys are required to reside in their counties. 1 *R. S.* 102, § 15 ; 1 *Edm. St.* 92. They were (by the Revised Statutes) appointed by the county courts of the respective counties, and "no person shall be appointed a district attorney unless he be at the time a counselor at law of the Supreme Court ; but if there be no such counselor at law residing in the county, or none willing to accept the office, an attorney at law may be appointed." 1 *R. S.* 108, § 15 ; 1 *Edm. St.* 98. They are required to take an additional oath of office. 1 *R. S.* 119, §§ 20, 24, subd. 6 ; 1 *Edm. St.* 109, 110. Attorneys and counselors are judicial officers. 1 *R. S.* 87, § 1, subd. 3 ; 1 *Edm. St.* 86 ; and were appointed by the court. "And so many counselors, solicitors and attorneys as shall, from time to time, be licensed to practice by the several courts of law or equity in this state." 1 *R. S.* 98 ; 1 *Edm. St.* 89. They are required to take the usual oath of office. 1 *R. S.* 120, § 24, subd. 3 ; 1 *Edm. St.* 110 ; 1 *R. S.* 287, § 66 ; 1 *Edm. St.* 298. And are public officers. Waters *v.* Whittlemore, 22 *Barb.* 593, 595, and cases cited. He is guilty of a misdemeanor if he resort to any malpractice, and his rights and duties are prescribed by statute. 1 *R. S.* 287, § 68, *et seq.* By legal fiction, attorneys are always presumed present in court, and the court takes judicial notice of who are attorneys. People *v.* Nevins, 1 *Hill*, 154, 161, 162. Courts of Oyer and Terminer are provided for by title 4, chapter 1, part 3 of the Revised Statutes. 1 *R. S.* 204, §§ 28, 29, 30, *et seq.* They are courts of record, authorized : 1. "To issue process of subpœna, requiring the attendance of any witness residing, or being in any part of this state, to testify in any matter or cause pending in such court." 1 *R. S.* 276, § 1 ; 1 *Edm. St.* 287. Subpœnas in behalf of the people in criminal cases were, pursuant to Revised Laws of 1813 and the Revised Statutes, to be issued by district attorneys. § 63. "The district attorney of every county shall have power to issue subpœnas for witnesses in support of any prosecution, to appear at any court, without the seal of such court ; and every such subpœna, subscribed by the district attorney issuing the same, shall be as

valid and effectual as if the seal of the court, at which any witness named therein is required to appear, had been affixed thereto." § 64. "Disobedience to every subpœna issued pursuant to the foregoing provisions, shall be punished in the same manner and upon the like proceedings as provided by law in cases of subpœnas returnable at any circuit court; and the person guilty of such disobedience shall be liable to the penalty at whose instance such subpœna issued, in the same manner and to the same extent as in cases of subpœnas issued in any civil suit." 2 *R. S.* 729, §§ 63, 64 ; 2 *Edm. St.* 753. The witness, by section 64, may be "punished" in the same manner, and upon the like proceedings, as provided by law in cases of subpœnas returnable at any circuit court ; not to half or one part of the punishment, but to the same punishment ; one punishment or part of the punishment is by summary proceedings, under title 2 of chapter 3, part 3 of the Revised Statutes. A second and further punishment is also by indictment for the contempt and indignity done the people in their sovereign capacity, by bringing their court into disgrace and contempt, under title 6 of chapter 1, of part 4 of the Revised Statutes. What authority is there for saying when the legislature have subjected the offender to the punishment, *i. e.*,—all the punishment prescribed in a certain case,—that the legislature meant only one of two punishments, especially as the legislature provided that he should be liable to the "like proceedings"—in the plural ? The clerks are allowed to issue blank seals, which may be applied to any process not requiring a previous allowance,—such as writs of *capias*, subpœna, etc. *Graham's Pr.* (2 ed.) 120. A writ wanting a seal was not, independent of being dispensed with by statute, void, but voidable. *Graham's Pr.* (2 ed.) 120 ; People *v.* Dunning, 1 *Wend.* 16 ; Jackson *v.* Brown, 4 *Cow.* 550 ; Dominick *v.* Eacker, 3 *Barb.* 17.

II. Disobedience of a subpœna is clearly, under our statute, a criminal offense punishable by indictment. People *v.* Mead, 64 *How.* 45–6, 47 ; 28 *Hun*, 230–1, 231–2 ; S. C. on appeal, 1 *N. Y. Crim. Rep.* 417. One who refuses to receive service of papers is guilty of contempt. Graham *v.* Bleakie, 2 *Daly*, 55, 60–1 ; Price *v.* Hutchison, *L. R.* 9 *Eq.* 534. So obstruct-

ing service of any paper. Conover *v.* Wood, 5 *Abb.* 84 ; Mead *v.* Norris, 21 *Wis.* 310.

III. Indictment was the proper remedy. It secured the accused the right of trial by jury rather than subjected him to the arbitrary will and power of the offended court or judge. State *v.* Spears, 2 *Speers (S. C.),* 22, 29 ; *Whart. Cr. Pr. & Pl.* (8th ed.) §§ 959, 960–1. In a proper case, where the offense is rank, the offender will be punished by " a protracted incarceration and a heavy pecuniary fine." Reg. *v.* Martin, 5 *Cox Cr. Cas.* 358–9. " That a willful contempt is an offense at common law, within no limited or restricted sense, but in the general sense of crime, cannot be successfully questioned." U. S. *v.* Jacobi, 1 *Flippin,* 109, and in the U. S. courts, *in re* Ellerbe, 4 *Crim. Law Mag.* 60.

IV. The indictment was valid. The Court of Appeals and Supreme Court have substantially so held. It is, however, well settled that, in cases of misdemeanors, an indictment in the language of the statute is valid. People *v.* Taylor, 3 *Den.* 91; Cox *v.* People, 80 *N. Y.* 502, 514–5. Or, in words of similar import. Thompson *v.* People, 3 *Parker,* 208 ; Frazer *v.* People, 54 *Barb.* 306 ; Tully *v.* People, 67 *N. Y.* 15 ; Pontius *v.* People, 82 *N. Y.* 339. It is sufficient if the indictment " contain the substance of the offense, with the circumstances necessary to render it intelligible, and inform the defendant of the allegations against him." Pontius *v.* People, *supra ;* Eighmy *v.* People, 79 *N. Y.* 546, 555–57 ; Burns *v.* People, 59 *Barb.* 531, 543 ; People *v.* Tredway, 3 *Barb.* 470 ; Campbell *v.* People, 8 *Wend.* 636.

The ancient strictness in regard to criminal pleadings has been greatly relaxed. People *v.* Bennett, 37 *N. Y.* 120, 121 ; Low *v.* People, 2 *Park. Crim.* 40, 41 ; People *v.* Rynders, 12 *Wend.* 431, 432 ; Holmes *v.* People, 15 *Abb. Pr.* 159. The old forms were devised to oust the defendant of the privilege of clergy, and need not be followed. People *v.* Rynders, 12 *Wend.* 431. Such strictness has been expressly abolished by statute. 2 *R. S.* 728, § 52 ; 2 *Edm. St.* 751 ; Tomlinson *v.* People, 5 *Park.* 320 ; 1 *Whart.* (7th ed.) *Cr. Law,* §§ 216–218. In Commonwealth *v.* Hall (97 *Mass.* 570), the name of the treasurer of the United States, " *F.* E.

Spinner," was stated to be "*P. E. Spinner;*" yet the court held the variance to be immaterial, and no cause for reversal. See the comments of the codifiers in the proposed Code of Criminal Procedure (1850), p. 154, § 302, and p. 148. See also Fralich *v.* People, 65 *Barb.* 51 ; Mapes *v.* People, 69 *Ill.* 526. The *facts* were amply pleaded, and the indictment good. People *v.* Loop, 3 *Parker Crim.* 559 ; Haskins *v.* People, 16 *N. Y.* 344, 347, 348 ; Quinlan *v.* People, 6 *Park.* 9 ; Low *v.* People, 2 *Park.* 37 ; People *v.* Rynders, 12 *Wend.* 431 ; Holmes *v.* People, 15 *Abb. Pr.* 159 ; Wilson *v.* People, 5 *Parker,* 178 ; Rosekrans *v.* People, 5 *Sup'm. Ct. (T. & C.)* 467, 475 ; People *v.* Clements, 26 *N. Y.* 197, 198.

V. On proof of defendant's failure to obey the subpœna, a *prima facie* case was made out against him. People *v.* Davis, 15 *Wend.* 608 ; Commonwealth *v.* Phillips, 3 *Pittsburg Rep.* 427.

VI. It was not necessary to show by direct, affirmative evidence defendant was a necessary or a material witness. The right to damages in a civil suit in favor of a party who subpœnas a witness, depends upon his materiality, and he is not damnified unless the witness were material. The penalty is given to the "aggrieved party." Courtney *v.* Baker, 3 *Den.* 30. A party who subpœnas a witness who is not material, is himself guilty of a contempt. Courtney *v.* Baker, 3 *Den.* 27, 31 ; Butler *v.* People, 2 *Colorado,* 295. The rule is entirely different where the offense is against the public and its authority is contemned and set at defiance, to the evil example of others, and it is sought to punish the accused for that only. A contempt of court is an offense against the authority of the state and its dignity, entirely distinct from an injury to the rights of any particular person. Matter of Muller, 7 *Blatchf.* 23, 24–8 ; Matter of Rhodes, 65 *N. C.* 518 ; Morris *v.* Whitehead, 65 *N. C.* 637 ; State *v.* Sauvinet, 24 *La. Ann.* 119, 120–2 ; Fanshawe *v.* Tracy, 4 *Bissell,* 490, 497–9 ; People *v.* Mead, 28 *Hun,* 232–3 ; People *v.* Rathbun, 21 *Wend.* 509 ; People *v.* Adams, *supra.* In Tecumseh Town Site Case, 3 *Neb.* 284, the court laid down the rule as follows : "The law will presume official acts of public officers to have been rightly done, unless the circumstances of the case overturn the presumption ; and the acts

done which presuppose the existence of other acts to make them legally operative, are presumptive proof of the latter. Bank v. Dandridge, 12 *Wheat.* 70 ; To same effect, Delaney v. Brett, 4 *Rob.* 712 ; Delassus v. U. S., 9 *Pet.* 118, 134 ; Leland v. Cameron, 31 *N. Y.* 115 ; People v. Carpenter, 24 *N. Y.* 86 ; Moore v. Tracy, 7 *Wend.* 229. In the case at bar, the witness was subpœnaed by a subpœna *duces tecum,* issued by the distrrict attorney of the county where the indictment was to be tried, to attend and give evidence upon the trial. The process was issued by a sworn public officer in the discharge of an official duty, and the law presumes the act was properly done and under a state of facts which justified and called upon him to perform the act. Upham v. Hosking, 62 *Cal.* 250, 259 ; Perkins v. Nugent, 45 *Mich.* 156, 159 ; State v. Early, 3 *Harr.* (*Del.*) 562 ; Commonwealth v. Reynolds, 14 *Gray,* 90. " The fact that he is summoned by the process of the court is evidence that his attendance is material for the purposes of justice, and it is an offense against justice for any one to prevent his attending. No one has the right to judge of his materiality, not even the witness himself, and it would seem that he who spirits him away, and thus obstructs the course of justice, is equally guilty, whether the evidence of the witness would be material or not."

VII. The court had a right to impose the punishment it did. By 2 *R. S.* 278, § 10, 2 *Edm. St.* 288, it is enacted that : " Sec. 10. Every court of record shall have power to punish as for a criminal contempt, persons guilty of the following acts and no others : . . . 3. Willful disobedience of any process or order, lawfully issued, or made by it. See *Code,* § 8, 267, *Penal Code,* § 143. " Sec. 11. Punishment for contempts, may be by fine, or imprisonment in the jail of the county where the court may be sitting, or both, in the discretion of the court ; but the fine shall in no case exceed the sum of $250, nor the imprisonment thirty days ; and where any person shall be committed to prison, for the non-payment of any such fine he shall be discharged at the expiration of thirty days." By section 15 it is provided : "Sec. 15. Persons punished for contempt under the preceding provisions, shall notwithstand-

ing be liable to indictment for such contempt, if the same be an indictable offense; but the court before which a conviction shall be had on such indictment, shall, in forming its sentence, take into consideration the punishment before inflicted." By the Code the imprisonment may be for six months (*Code*, § 2285); and until the fine imposed is paid, the court to fix the duration of imprisonment therefor. The punishment here provided for is summary, and entirely separate and independent of prosecution by indictment. *Penal Code*, §§ 680–1 ; 2 *Bish. Cr. Law* (7 ed.) § 264 ; 1 *Bish. Cr. Law* (7 ed.) § 1067 ; State *v.* Woodfin, 5 *Ired.* (*N. C.*) 199 ; People *v.* Fancher, 4 *Thomp. & Cook*, 471–2 ; Com. *v.* Phillips, 3 *Pittsburg R.* 432 ; People *v.* Mead, 28 *Hun*, 233–44 ; 1 *N. Y. Crim. Rep.* 417. It is further provided (2 *R. S.* 692, § 14 ; 2 *Edm. St.* 715) that : "Sec. 14. Every person who shall be guilty of any criminal contempt, enumerated in the second title of the third chapter of the third part of the Revised Statutes, shall be liable to indictment therefor as a misdemeanor, and, upon conviction, shall be punished as hereinafter prescribed." Title 2 of chapter 3, part 3 of the Revised Statutes, begins 2 Revised Statutes, 276, 2 Edmonds' statutes, 286, and ends 2 Revised Statutes 291, 2 Edmunds' Statutes, 302. Of course it includes 2 Revised Statutes, 278, sections 10, 11 and 15, 2 Edmonds' Statutes, 288. Section 14 (2 *R. S.* 692 ; 2 *Edm. St.* 715) declares that "one convicted criminally of a contempt shall be punished as hereinafter (not hereinbefore, p. 278) prescribed," and we are to look thereafter for the punishment. We find it in section 40 of the same title, a few pages on (2 *R. S.* 697 ; 2 *Edm. St.* 719), as follows : "Sec. 40. Every person who shall be convicted of any misdemeanor, the punishment of which is not prescribed in this or some other statute, shall be punished by imprisonment in a county jail not exceeding one year, or by fine not exceeding $250, or by both such fine and imprisonment." *Penal Code*, § 15. This statute has been several times considered and construed by the courts to allow one year's imprisonment and a fine of $250 for criminal contempt. People *v.* Sherwin, 1 *N. Y. Crim. R.* 543, OSBORN, J. In People *v.* Klugman (49 *How. Pr.* 488), Mr. Justice WESTBROOK, presiding, sentenced Klugman to thirty days' imprisonment and $250 fine,—the full

punishment allowed in summary proceedings,—and added: "We are limited in the punishment upon this proceeding. That, however, which we propose to inflict will not prevent your indictment by the grand jury for the same contempt, and also for an attempt to bribe a juror." Klugman was indicted at the same term, before the same court, for a criminal contempt. The same construction was given to a similar provision of the Penal Code (§ 15). Matter of Hallenbeck, 1 *N. Y. Crim. Rep.* 437, LEARNED, J.; People *v.* McTameny, 30 *Hun,* 505–507, *Gen. T. 3rd Department;* S. C., 13 *Abb. N. C.* 55; 1 *N. Y. Cr. R.* 437. And under the Revised Statutes. Foote *v.* People, 56 *N. Y.* 321. It follows, of necessity, that it must be so from the above declaration of the Court of Appeals and the Supreme Court, that the proceedings are separate and distinct.

(The points on questions not considered by the Court of Appeals are omitted.)

MILLER, J.—The defendant was convicted on an indictment for contempt in disobeying a subpœna issued by the district attorney of Albany county in a criminal case, and he pleaded guilty to two other indictments of the same character. He was sentenced for each of the offenses charged, and the question now presented involves the validity of these indictments. If the indictments did not impute to the defendant a criminal offense, in violation of the statute of this state (and were defective in charging such offense) then they are insufficient to sustain a verdict of guilty, or a sentence after conviction, or after a plea of guilty.

The indictments are founded upon the provisions contained in 2 *R. S.* 692, § 14, which declare that, "Every person who shall be guilty of any criminal contempt enumerated in the second title of the third chapter of the third part of the Revised Statutes, shall be liable to indictment therefor as a misdemeanor, and upon conviction shall be punished as hereinafter prescribed."

To make out an offense within this provision and sustain a conviction under the same, the indictment must charge that the defendant was guilty of some act which constituted a

criminal contempt in violation of the statute cited. The only acts which constitute a criminal contempt within the provisions of section 14, are specified in section 10 of 2 *R. S.* 278, which declare, " Every court of record shall have power to punish as for a criminal contempt, persons guilty of either of the following acts and no others . . . (Subdivision 3) willful disobedience of any process or order lawfully issued or made by it."

The subsequent sections, 11, 12 and 15, make provision in reference to the punishment to be inflicted in case of a violation of the provisions of section 10.

The charge made in the indictments against the defendant can only rest upon subdivision 3 of section 10, above quoted, and, in order to sustain the indictments, a case must be made out within the language and meaning of that subdivision, and there must be a willful disobedience of a process or order lawfully issued or made by the court in the exercise of its legal authority.

The court alone can issue the process or make the order a violation of which constitutes the contempt, and it cannot lawfully be issued or made by any intermediate authority. It was evidently intended by the statute that the contempt which was the subject of condemnation and punishment, should be a matter of consideration by the court itself, and that it should pronounce judgment as to its character and the punishment that should be inflicted.

Each of the indictments against the defendant, among other things, alleges that the writ of subpœna was duly and lawfully issued by the district attorney, and tested in the name of a justice of the Supreme Court, and directed to the defendant commanding him to appear at a Court of Oyer and Terminer at a time specified ; that it was lawfully served on the defendant, and that he was notified to appear and give evidence according to the exigency of the writ. There is no allegation that any process or order was lawfully issued or made by any court of record, and although it is stated to be a writ issued by the people, such statement does not necessarily establish it as a process or order issued or made by a court of record. The allegations in the indictments that it was called a subpœna, and that it was lawfully issued and tested by a justice of the

Supreme Court, did not make it a process or order lawfully issued or made by any court of record. Something more was required to bring it within the statute. It should have been made to appear that a court of record, duly organized, had issued the process or made the order which was disobeyed. It will be observed that section 10, subdivision 3, instead of declaring that a willful disobedience of any order or process of the court can be punished as a criminal contempt, defines the process or order which cannot be disobeyed without subjecting the party to indictment for a misdemeanor, by the use of the term "lawfully issued or made by it," thus indicating an intention to include only such process or order as was expressly directed by the court itself, while acting officially in the discharge of its functions.

Courts of Oyer and Terminer have no power to issue subpœnas (2 *R. S.* 276, § 1); but the subpœna described purports to be issued either by a justice of the Supreme Court or by the district attorney. It is difficult to see how such a process can be regarded as issuing from, or as an order made by any court of record. Section 10, subdivision 3, is highly penal in its character, and cannot well be said to embrace a case where the process or order was not, in fact, lawfully issued or made by a court of record duly constituted for that purpose.

The allegation in the indictment that the process was duly issued by the district attorney is inconsistent with the position that it was issued by a court of record. The writ of subpœna which was issued was expressly authorized by 2 R. S. 729, sections 63 and 64, where power is conferred upon the district attorney to issue subpœnas for witnesses in the precise form alleged. The process was a subpœna issued by the district attorney alone, and the court took no part in his official act in this respect. It is nowhere alleged in the indictment that the subpœna in question was a process lawfully issued by the order of any court of record. Without this, there was no power to punish by indictment for a criminal contempt within the language and meaning of the statute. To sustain a charge for a criminal contempt under section 10, and an indictment under section 14, it should be averred and made to appear that the willful disobedience alleged was, within the terms of the stat-

ute, a distinct and clear disobedience of the process or order of the court of record stated in the indictment.

In People v. Gilmore (26 *Hun*, 1), it was held that to warrant punishment as for a criminal contempt, the mandate, process or order disobeyed must have been lawfully issued or made by some court of record as such; and it was said in the opinion of DAVIS, J., that if not so issued by a court of record as such court of record, then another and quite different statute would be applicable to the case. In People v. Riley (25 *Hun*, 587), GILBERT, J., says: "There exists no undefined power authorizing the commitment of citizens for contempt in cases defined and limited by statute." See also Matter of Watson v. Nelson, 69 *N. Y.* 537; O'Gara v. Kearney, 77 *Id.* 423.

The views already expressed are also supported by the notes of the revisers of the statutes, and the other provisions of the statutes in regard to contempts which are not criminal.

In their notes on section 10 (5 *Edm.* 426), the revisers say: "A solid and obvious distinction exists between contempts strictly such and those offenses which go by that name, but which are punished as contempts only for the purpose of enforcing some civil remedy. This distinction has been observed, and the former are intended to be included in the preceding sections. The latter class are treated of subsequently, among miscellaneous proceedings in civil cases."

From these remarks it is quite obvious that the contempts which are subsequently provided for among miscellaneous proceedings in civil cases, were not intended to be included among criminal contempts. It follows that the framers of the statute never intended that the disobedience of a subpœna in civil cases should be regarded as a criminal contempt. The provision of section 26 (2 *R. S.* 538), declaring that, "Persons proceeded against, according to the provisions of this title, shall notwithstanding, be liable to indictment for the same misconduct, if it be an indictable offense," is not in conflict with the position last stated. This section merely recognizes the fact that there may be some provision of the statute which makes one or more of the simple contempts a crime, but it does not sanction the idea that disobedience of a subpœna is a criminal contempt, indictable as a misdemeanor under the statute which declares

such contempts to be misdemeanors. The distinction made by the revisers is repeated in their note to title 13, chapter 8 of part 3 of the Revised Statutes (5 *Edm.* 502), entitled : "Of proceedings as for contempts, to enforce civil remedies and to protect the rights of parties in civil actions." After having pointed out the distinction between contempts which are really such, and those which are treated as contempts for the mere purpose of enforcing some civil remedy, they say the former class has been provided for. "It is the object of this title to provide for the latter class." As provision is made in the title to which this note is appended, to punish the failure to obey a subpœna, there would seem to be no question that the revisers did not intend to make the disobedience of a subpœna a criminal contempt.

Independent of the provisions of the statute in regard to criminal contempts, there are other enactments relating to the disobedience of subpœnas issued by an attorney in civil actions or county clerk or district attorney in criminal cases, which define the penalties to which a defaulting witness in such cases subjects himself, and such penalties being designated and no others attached to the same, they must be regarded as alone intended to be inflicted. The explicit provisions of these statutes are controlling and conclusive, and clearly indicate the intention of the law-makers to provide specially for such cases, and that they should not, by any rule of construction, be regarded as embraced within the provisions of law in regard to willful disobedience of an order or process lawfully made or issued by a competent court. All other provisions, therefore must be excluded and the penalty incurred must be limited to these plain provisions of the statute, which furnish ample remedies in such cases, as will be seen from an examination of the same. The provisions of the statute in regard to witnesses, their privileges and compelling their attendance (2 *R. S.* 400, § 42), after providing the mode of their subpœna by section 43, prescribes the penalties for non-attendance, and among those is, he "shall be deemed guilty of a contempt of the court out of which such subpœna issued." 2 *R. S.* 400, § 43. If a criminal contempt was intended, it would no doubt have been so declared, for there is a marked difference, as we have

SHERWIN *v.* PEOPLE. 541

seen, between a simple and a criminal contempt under the Revised Statutes. It is a reasonable and fair intendment, from the language employed, and from the omission to declare otherwise, that it was the intention of the legislature to make full and ample provision for a contempt committed in the case enumerated ; and it would be going very far to hold that under the previous provision a party could be subjected to the penalty arising from a criminal contempt.

A further provision is made for the punishment of contempts in proceedings as for contempts to enforce civil remedies and to protect the rights of parties in civil actions, among which are enumerated, "all persons summoned as witnesses for refusing or neglecting to obey such summons." 2 *R. S.* 535, § 1, subdiv. 5). The distinction is thus maintained between the two classes of contempts. The punishment on conviction for a criminal contempt was (2 *R. S.* 278, § 11), a fine of $250 and an imprisonment for thirty days. Such conviction was (§ 15) no bar to an indictment for the same offense, if it was indictable, but the court, in passing sentence, was to take into consideration the punishment previously inflicted. Section 14, as we have seen, provides that a person guilty of any criminal contempt named in section 10, *supra*, shall be liable to indictment for the same as a misdemeanor and punished as thereinafter prescribed ; and by section 40 (2 *R. S.* 697), such punishment was by imprisonment in a county jail not exceeding one year or by fine not exceeding $250, or by both. It is hardly to be supposed that it was intended to embrace in the punishment prescribed, the failure to obey the subpœna issued by a district attorney in a criminal case or by an attorney in a civil action.

Aside, however, from the statutes to which reference has been had, the question considered is, we think, fully settled and disposed of by the provision contained in section 64 of article 2, title 4, chapter 4, part 4 of the Revised Statutes, which is entitled, "Of Indictments and Proceedings thereon." This section fully prescribes the penalty for willfully neglecting to obey a subpœna issued by a district attorney in a criminal case, and settles definitely any doubts which might possibly arise upon the question whether a criminal contempt had been committed. It declares that such disobedience is to be "pun-

ished in the same manner and upon like proceedings as pro-
vided by law in cases of subpœnas returnable at any Circuit
Court, and the person guilty of such disobedience shall be liable
to the party at whose instance such subpœna issued, in the
same manner, and to the same extent, as in cases of subpœnas
issued in any civil suit ;" thus evincing unmistakably that
such disobedience of a district attorney's subpœna stands
upon precisely the same ground as, and that it is not a
criminal contempt any more than refusing to answer a sub-
pœna in a civil case.   By the statutes to which reference has
been had, a violation of a subpœna in either case renders the
witness amenable to the same consequences as for a simple
contempt, to be punished in the same manner, and to the same
extent, and upon proceedings of the same character.

In the face of an express statute, providing in clear and
unmistakable language for the penalty to be incurred, there is
no valid ground for holding that other penalties are to be
inflicted, which are, at least, of doubtful application, and for
which the statute itself, under which they are sought to be
enforced, does not clearly and directly provide.

It is a well established rule of law that statutes which create
criminal offenses are to receive a strict and not a liberal con-
struction, and they should not be enlarged by interpretation
beyond their fair meaning and import.   The multiplication of
offenses by construction of penal statutes is in conflict with the
general policy of the law, and a statutory crime can only be
created by phraseology which is clear, direct and unquestion-
able as to its intention.   Unless this is manifest, the language
employed cannot be held to include a criminal charge.   If a
new criminal offense was intended to be created by section 10,
subd. 3, *supra*, it was only when a competent tribunal, sitting
as a court, and exercising its functions as such, had made a law-
ful order or directed a process to be issued, and not in a case
where the order can be imputed to it by a mere fiction of law.

The Court of Oyer and Terminer, as originally organized,
had power under the Revised Statutes (2 *R. S.* 276, § 1,
subd. 1) to issue writs, including a subpœna, and original sub-
pœnas of courts of record were required to be issued under the

seal of the court and indorsed by the attorney.  2 *R. S.* 277, §§ 8, 9.

But the provisions in regard to the issuing of subpœnas in criminal cases are special, and power is given to the district attorney, as an officer under the law, to issue subpœnas which are different from the subpœnas originally intended to be issued by the Court of Oyer and Terminer, and under its seal.  By 2 *R. S.* § 63, the district attorney is authorized to issue subpœnas without the seal of the court, and they are declared to be as valid as if the seal of the court had been affixed thereto.  A subpœna thus issued had the same validity as if it had been signed by the clerk and issued under the seal of the court. As we have already seen, under section 64, the punishment for disobedience of a subpœna issued by the district attorney is the same as in civil cases.

It is thus apparent that it was not intended by the legislature, in conferring authority upon the district attorney to issue subpœnas, and in providing for the failure to obey the same, to create an offense within the meaning of section 10, subd. 3, *supra*, or to regard the disobedience of the same as a willful violation of an order made or a process issued by the court itself.   Such a subpœna is not issued by the court itself or under its seal, but it is a subpœna issued under the statute by an officer of the court expressly authorized for that purpose.   If the disobedience of a subpœna issued by the district attorney is a misdemeanor, liable to be punished under indictment, as provided by section 14, *supra*, then the same rule would be applicable to innumerable cases where subpœnas are authorized to be issued, and for which the statute has provided, which it is needless to enumerate.

The learned counsel for the respondent insists that the subpœna in question was a process of the court, and properly issued by the district attorney, with the same effect as if issued on a special order of the court.

While, as a matter of form and by legal fiction, a subpœna may be regarded as issuing out of and by order of the court, and, for certain purposes, as the act or mandate of the court, and a party upon whom it is served may be compelled to obey the same, and, upon failure to do so, punished for disobedience

and for his contempt of the authority of the court, upon a proper application, after he has had full opportunity to be heard in his own defense,—as we have already seen, a subpœna thus issued is neither a process nor order of the court, which is named or embraced within the provisions of the section of the Revised Statutes already cited.

The process or order referred to is one which emanated from the court, while sitting as such, and it requires something to be done by the party to whom it is issued or directed, which is within the province of the court to direct, and which it has full power and authority to command in its capacity as a judicial tribunal. It does not include a process issued merely by the act of a public official, without any direct action or determination of the court.

After a careful examination, we are satisfied there is no authority for the doctrine that the disobedience of a subpœna under our statute, or otherwise, is a criminal offense punishable by indictment, and no adjudicated case upholds such a doctrine. When the defendant's case was presented to this court, on certain preliminary questions growing out of his arrest in the city of New York, the precise point now under discussion was neither considered nor determined, and the decision then made is not an authority which sustains the position taken by the respondent's counsel. People *ex rel.* Sherwin *v.* Mead, 92 *N. Y.* 415; 1 *N. Y. Crim. Rep.* 417.

We may concede that a party refusing to obey a subpœna, or in any way obstructing the service of papers, is by law in contempt, but it by no means follows that the proper mode of punishment is by a proceeding by indictment. The usual mode of punishing the offender is by an application to the court, upon notice, where the parties can have an opportunity to be heard, and make an excuse, if any they have, for their conduct in disregarding or disobeying the subpœna.

Whether a willful contempt is an offense punishable by indictment at common law, is not material to determine in the case now considered, as the question to be decided depends upon the interpretation to be given to the statutory provisions which have been cited and which bear upon the subject.

After careful consideration we are brought to the conclu-

sion that neither of the indictments against the defendant contains a legal charge against him of any offense for which he could properly and lawfully be punished, either for a criminal contempt or a misdemeanor.

The result at which we have arrived disposes of the case, and renders it unimportant to examine and consider the numerous other questions raised upon the trial. It follows that the conviction had and the sentences imposed for offenses not authorized by law were erroneous, illegal and void. They should, therefore, be reversed and annulled, and the indictments quashed, and the defendant discharged.

All concur, except FINCH, J., not voting.