PEOPLE ex rel. DRAKE v. ANDREWS, Supreme Court Justice.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1909.)

1. CONTEMPT (§ 67*)—REVIEW—REMEDY.
   Certiorari is a proper remedy to review an order adjudging relator guilty of a contempt of court.
   [Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 221, 222; Dec. Dig. § 67.*]

2. WITNESSES (§ 21*)—CRIMINAL CONTEMPT—RESISTANCE TO LAWFUL "MANDATE"—SUBPŒNA.
   A subpœna duces tecum is not a "mandate," within Code Civ. Proc. § 8, subds. 3, 4, making punishable as a criminal contempt willful disobedience or resistance to a mandate of the court.
   [Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 21.*
   For other definitions, see Words and Phrases, vol. 5, p. 4331; vol. 8, p. 7715.]

3. WITNESSES (§ 21*)—CRIMINAL "CONTEMPT"—DISOBEDIENCE TO SUBPŒNA.
   An undersheriff, advising or directing a witness upon whom he had served a subpœna duces tecum to disobey it, and hide or destroy the books, and not produce them, is not punishable as for a "contempt" of court, within Code Cr. Proc. § 619, making disobedience to a subpœna punishable as a criminal contempt, especially where the witness, regardless of what the undersheriff said, obeyed the subpœna and produced the books.
   [Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 21.*
   For other definitions, see Words and Phrases, vol. 2, pp. 1489–1492; vol. 8, p. 7614.]
   McLennan, P. J., dissenting.

Certiorari by the People, on relation of Leonard Drake, against William S. Andrews, Justice of the Supreme Court, to review an order adjudging relator guilty of a contempt of court. Order reversed, and relator discharged.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Jones, Townsend & Rudd, for relator.

Emerson M. Willis, for respondent.

WILLIAMS, J. The order should be reversed, and the relator discharged from custody. Certiorari is a proper remedy for the review of this order. People ex rel. Taylor v. Forbes, 143 N. Y. 119,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

38 N. E. 303. The order states the grounds upon which the conviction was based substantially as follows: A grand jury was in session at that term of court, and the district attorney of the county issued a subpœna for John Cox, a witness, requiring him to produce before such grand jury, as evidence, the books, papers, and writings therein described, and delivered such subpœna to the sheriff's office of the county for service. There was being investigated by the grand jury a charge of felony, and the subpœna was issued in reference to that charge. The subpœna was delivered to the relator, who was undersheriff, and he served the same on the witness Cox. At the time of such service, and at various times thereafter, the relator told said witness that he must not produce the books called for by the subpœna, but must hide or destroy the same. The court found these facts to be true, and determined that the relator's direction to the witness to hide or destroy the books, and not to obey the directions of the subpœna to produce them before the grand jury, constituted a criminal contempt, and disorderly, contemptuous, and insolent behavior on the part of an officer of the court, intended directly to interfere and interrupt its proceedings and those of the grand jury, and to impair the respect due to the court's authority, and constituted willful disobedience of the lawful mandate of the court and resistance willfully offered thereto, and for this the punishment was inflicted.

 We are not inclined to disagree with the trial court in its determination as to the facts. We are only interested in the question as to whether the acts committed constituted a criminal contempt and were punishable as such. Section 8 of the Code of Civil Procedure provides what acts may be so punishable, and that no others can be. There are six subdivisions in the section, none of which are applicable to this case, unless it may be the third and fourth. The first subdivision has no application, because the acts therein specified must be "committed during its [the court's] sitting in its immediate view and presence," and the acts here complained of were committed some distance away from the court and the grand jury. It is claimed, however, that the acts constituted willful disobedience to the lawful mandate of the court, and resistance willfully offered to such lawful mandate, and so were a criminal contempt under subdivisions 3 and 4, above referred to.

This section, though in the Code of Civil Procedure, relates to all courts of record, in criminal as well as civil cases; but we must read with it section 619 of the Code of Criminal Procedure, which provides that disobedience to a subpœna, or a refusal to be sworn or to testify, may be punished by the court or magistrate, as for a criminal contempt, in the manner provided in the Code of Civil Procedure. This latter provision refers to subpœnas in criminal cases, and is therefore peculiarly applicable to this case. Taking the two provisions together, it is clear that, whether a subpœna is, strictly speaking, a mandate or not, disobedience to it is punishable as a criminal contempt. Resistance willfully offered to this subpœna could only be so punishable in case it was a mandate, under section 8 of the Code of Civil Procedure. I do not think the subpœna is such a mandate.

Attention is called by counsel to the provisions of section 338, 3307,

and 3343 of the Code of Civil Procedure as indicating that a subpœna is covered by the word "mandate" in section 8 above referred to; but I think People ex rel. v. Gilmore, 26 Hun, 1, and Sherwin v. People, 100 N. Y. 351, 3 N. E. 465, are authority to the contrary. They were cases under the provisions of the Revised Statutes and the Code of Procedure; but the reasoning in those cases is to me quite conclusive that these provisions of section 8 were not designed to cover subpœnas, and make disobedience and resistance thereto criminal contempts. It would not be well to analyze and discuss those cases and the statutes under which they were decided in this opinion. It would occupy too much space. They must be carefully read and considered themselves.

As I have already suggested, we have still left the provisions of the Code of Criminal Procedure making disobedience to a criminal subpœna punishable as a criminal contempt. If this had been a proceeding to punish the witness for disobeying the subpœna, or refusing to produce the books, the conviction and punishment would have been proper; but I am unable to see how the relator could be so dealt with. He did not disobey the subpœna. He at most advised or directed the witness to disobey it, and such advice or direction was not followed. The witness, regardless of what the relator said to him, obeyed the subpœna and produced the books before the grand jury.

I am unable to see how advising or directing this witness to disobey the subpœna could be punished as a criminal contempt in this proceeding, especially as disobedience to the subpœna did not result. It was fully obeyed. All concur, except McLENNAN, P. J., who dissents.

McLENNAN, P. J. (dissenting). It will be assumed that the facts are correctly stated in the return and order appealed from. In the prevailing opinion it is said:

"We are not inclined to disagree with the trial court in its determination as to the facts."

So far as important to note, the facts are: In February, 1909, a regular term of the Supreme Court was in session at the city of Utica, in the county of Oneida, in connection with which a grand jury had been convened and was engaged in conducting certain investigations involving alleged violations of the criminal law, and, among others, to determine whether one John Doe should be indicted as for a felony charged to have been committed by him. A subpœna duces tecum was duly issued by the district attorney of said county, directed to one John Cox, commanding him to produce before the grand jury certain books and papers in his possession deemed necessary to such investigation. Such subpœna was delivered to the sheriff's office, and in due course was given to the relator for service, who at the time was, and for several years prior had been, undersheriff of said county. The relator undertook to, and actually did, serve the subpœna on Cox; but at the time he served the same, and at various times thereafter and before the day when returnable, he willfully solicited, requested, and advised said Cox not to obey its command, but, on the contrary, ad-

vised him not to produce before the grand jury the books and papers therein called for, advised him to destroy or hide them, and himself offered to steal them in order to make their production impossible. The advice so given and the plan so outlined by the relator was not followed or adopted by Cox, and the books and papers were in fact produced by him before such grand jury. The trial court found that such acts and conduct on the part of the relator—

"constitute a criminal contempt of this court, and insolent, disorderly, and contemptuous behavior on the part of an officer of the court, intended directly to interrupt its proceedings and the proceedings of said grand jury, and to impair the respect due to the court's authority, and constitute a criminal contempt and willful disobedience of the lawful mandate of the court and resistance willfully offered thereto."

The conduct of the relator in the premises is properly characterized by the trial justice in the finding above quoted, and the result or effect of such conduct, as stated therein, is not exaggerated. It cannot be justified or approved, excused, or even palliated. The question presented by this appeal is: Can an officer who is guilty of such acts and conduct be punished therefor as for a criminal contempt? If not, as it seems to me, the proper administration of the criminal law may be made impossible.

The district attorney of a county is empowered to issue a subpœna such as was issued in this case. Sections 609, 613, Code Cr. Proc. There is no other provision of law which enables him to compel the attendance of witnesses or the production of books and papers before a grand jury. The only means provided by law by which a district attorney can procure a subpœna so issued by him to be served is to deliver it to a peace officer, and upon the delivery to such peace officer the duty of serving the same is imposed upon him. Section 614, Code Cr. Proc. An undersheriff of a county is included within the definition of a peace officer. Section 154, Code Cr. Proc. A subpœna is declared to be a "process" (section 607, Code Cr. Proc.), and subdivision 2, § 3343, of the Code of Civil Procedure, declares that the word "mandate" includes a "process." Section 8 of the Code of Civil Procedure defines what acts constitute a criminal contempt, among others:

"(3) Willful disobedience to its [the court's] lawful mandate. (4) Resistance willfully offered to its lawful mandate."

The subpœna in this case being a "lawful mandate," within the meaning of the sections to which attention has been called, I fail to see how it can be contended that the acts of the relator did not constitute a criminal contempt. The duty of properly serving such mandate (the subpœna in this case) was quite as effectually imposed upon the relator as if it had been directed to him and had in terms directed him to serve the same. The duty to properly serve the subpœna was imposed by law upon the relator, and it was unnecessary that a direction to perform such duty should be contained in the subpœna. Instead of properly performing the duty thus imposed, he did practically everything in his power to make the mandate of the court ineffective. To all intents and purposes he willfully disobeyed and resisted its solemn

command. If after having undertaken to serve the subpœna in question, and thus discharge the duty imposed upon him by law, he had willfully refused and neglected to do so, would he have been guilty of disobedience to such mandate? If so, to make such service in a manner intended to make it ineffectual was no less disobedience. Indeed, the course first suggested would have been much less blameworthy than the one which the relator actually did pursue. Did not the relator willfully resist the command of the subpœna? It having been delivered to him for service, and he thereupon having been directed by law to serve it, he did not discharge the duty thus imposed by handing the paper to the witness named therein, and at the same time using his best endeavor to induce such witness not to produce the books called for, but to destroy them.

It cannot be possible that the fact that Cox refused to follow the advice of the relator, and actually did produce the books and papers called for, in any manner changes the quality of the act charged against the relator. Ordinarily the advice so given by an officer, especially if given by one who had occupied the important office of undersheriff of a county for years, would have been followed, and the books would not have been produced, but would have been destroyed. So that we are only interested to know whether an officer guilty of such acts may be punished therefor and a repetition be prevented. If such conduct on the part of a peace officer may not be punished, and that comes to be understood, it is quite evident that the courts will be powerless to effectually enforce obedience to their mandates. If the relator in this case may not be punished as for a criminal contempt, then every peace officer in the county of Oneida may do precisely as he did and not be liable to such punishment.

It is said that the relator may be punished for such conduct under an indictment found pursuant to section 112 of the Penal Code. If we assume that he is liable to indictment and punishment under that section, it would afford a very inadequate remedy for compelling peace officers to discharge their duty in respect to the service of a lawful mandate of the court, which oftentimes becomes immediately necessary in order that the business of a court may be continued. But, in any event, if it be a fact that the relator may be so indicted, that is no answer to the proposition that he may not also be punished as for a criminal contempt. Section 680 of the Penal Code provides:

"A criminal act is not the less punishable as a crime because it is also declared to be punishable as a contempt of court."

Section 681 provides:

"Where it appears, at the time of passing sentence on a person convicted, that he has already paid a fine or suffered an imprisonment for the act of which he stands convicted, under an order adjudging it a contempt, the court, passing sentence, may mitigate the punishment to be imposed, in its discretion."

I conclude that the subpœna issued in this case was a "mandate," within the provisions of the Codes referred to, that it was issued out of a court (Am. & Eng. Ency. of Law, vol. 23, p. 160), and that the relator was guilty of a criminal contempt, in that he violated subdivi-

sions 3 and 4 of section 8 of the Code of Civil Procedure, and for those reasons the order appealed from was properly made.

But, independent of the several provisions of law to which attention has been called, I am of the opinion that the Supreme Court possesses inherent power to punish as for a criminal contempt any of its officers, charged with the duty of serving a "process" issued out of such court, who willfully seek, in the pretended performance of such duty, to make such service and "process" ineffectual for the purpose for which it was issued, and who thus willfully attempt to thwart the purpose of the court in its endeavor to properly administer the law and to promote the ends of justice, and so notwithstanding such attempt on the part of such officer may have failed of its purpose.

I conclude that the order appealed from should be affirmed, with costs of this appeal against the relator.